```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
                  FORT WORTH DIVISION

TROY CHAVEZ                    §
                               §
VS.                            §   CIVIL ACTION NO. 4:11-CV-864-Y
                               §
WELLS FARGO BANK, N.A.         §
```

## AMENDED ORDER GRANTING MOTION TO DISMISS

Before the Court is the Motion to Dismiss (doc. 33) filed by defendant Wells Fargo Bank, N.A. ("Wells Fargo"). After review, the Court GRANTS the motion.

I.  Background

In August 2001, plaintiff Troy Chavez received a loan from America's Wholesale Lender Corporation and used the loan to purchase certain real property in Arlington, Texas ("the property"). (Pl.'s Sec. Am. Compl. 2.) The following year, Chavez obtained a refinancing loan ("the loan") from World Savings Bank, FSB ("WSB"). (*Id.*) To evidence the loan, Chavez signed a promissory note made payable to WSB and its successors. (Defs.' App. 1.) In addition, Chavez signed a deed of trust securing his repayment of the loan and his performance of the covenants under the note. (*Id.* at 8.) WSB later assigned its interests under the note and deed of trust to Wells Fargo, and Wells Fargo began servicing the loan. (Pl.'s Sec. Am. Compl. 2.)

Chavez began experiencing financial difficulties and fell behind on his loan payments. (*Id.* at 2-3.) Chavez contacted Wells Fargo and explained his financial situation, and a Wells Fargo representative told him that he was eligible for a loan modification. (*Id.* at 3.) The representative instructed Chavez to submit an application, directed

Chavez to stop making payments, and assured him that Wells Fargo would not foreclose during the loan-modification process. (*Id.*) Chavez complied with these instructions. (*Id.*)

Nevertheless, Chavez received a letter from Wells Fargo in October 2010 informing him that he had not submitted all necessary documents. (*Id.*) When Chavez called to inquire about what additional documents he needed to submit, Wells Fargo informed him that it already had the information it needed, assured him again that he was qualified for the loan modification, and reiterated that he did not need to make any payments during the loan-modification process. (*Id.*) The following month, Chavez received another letter informing him that he needed to submit additional information. (*Id.*) Chavez submitted the additional information a few months later. (*Id.*)

This notwithstanding, Wells Fargo sent Chavez a letter in January 2011 explaining that his application for a loan-modification had been denied on the ground that he had not submitted all necessary documents. (*Id.* at 4.) Chavez, upon receipt of the letter, inquired about what additional information needed to be supplied. (*Id.*) Wells Fargo, once again, told him it had all the information it needed. (*Id.*)

That same month, Chavez received yet another letter from Wells Fargo, this time advising him that his application was under evaluation. (*Id.*) The letter made the same assurances as before, including that his home would not be foreclosed upon during the loan-modification process. (*Id.*) A few more letters followed, collectively giving Chavez further instruction on what was needed to complete his

2

application. (*Id.*) Chavez again complied. (*Id.*)

Nonetheless, in February 2011, Wells Fargo notified Chavez that he had not qualified for the loan modification because his loan "did not meet imminent default criteria." (*Id.*) At this point, Chavez had not been making loan payments for more than a year. (*Id.*) Wells Fargo repeated its prior assurances that his house would not be foreclosed upon and told him that he had thirty days to contact its office to discuss the reason he had not qualified and to explore alternative loss-mitigation options. (*Id.*) Chavez spoke with a Wells Fargo representative about this matter and learned that he had not qualified because he had too much equity in the property. (*Id.* at 4-5.)

Chavez thereafter contacted Wells Fargo's loss-mitigation department and began the loan-modification process again in August 2011. (*Id.* at 5.) Chavez then learned that Wells Fargo had scheduled the property to be sold at a September 2011 foreclosure sale. (*Id.*) Chavez spoke with a Wells Fargo representative about this, and the representative assured him that the foreclosure sale would be cancelled because he was in the loan-modification process. (*Id.*) Chavez frequently checked in on the status of his application and corresponded with various Wells Fargo representatives to ensure that he had submitted all necessary information. (*Id.*)

In any event, Wells Fargo eventually scheduled the property to be sold at a December 2011 foreclosure sale. (*Id.*) At this point, Chavez had accrued numerous charges for late fees and past-due

interest. (*Id.* at 6.) Based on these facts, Chavez filed the instant suit in the 236th Judicial District Court, Tarrant County, Texas, and obtained a temporary restraining order enjoining the December 2011 sale (doc. 1).

Wells Fargo then removed the case to this Court (doc. 1), and Chavez twice amended his complaint (docs. 21, 32). Chavez's second amended complaint (doc. 32) asserts claims against Wells Fargo for (1) breach of contract, (2) anticipatory breach of contract, (3) unreasonable collection efforts, (4) violations of the Texas Debt Collection Practices Act ("TDCPA"), and (5) negligent misrepresentation. Wells Fargo now moves to dismiss Chavez's second amended complaint for failure to state a claim.

II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*

4

*& Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And his "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). "A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.

5

2007) (citations omitted). In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

III. Analysis

    A.   Preemption Under the Home Owners' Loan Act

    Wells Fargo contends that Chavez's claims are preempted by the Home Owners' Loan Act ("HOLA"). Under HOLA and its accompanying regulations, a state-law claim is preempted if it purports to impose requirements on a federal savings bank regarding "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). HOLA also preempts state laws regarding "[t]he terms of credit . . . , balance, payments due, or term to maturity of the loan," as well as state laws regarding "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees." 12 C.F.R. § 560.2(b)(4)-(5).

    WSB, a federal savings bank subject to HOLA, originated Chavez's mortgage loan. Through a series of transactions, Wells Fargo acquired the loan. Wells Fargo is not a federal savings bank. Nonetheless, Wells Fargo argues that it is entitled to the same protections under HOLA as the originating bank.

    Some federal courts have held that HOLA applies to successors

of federal savings banks that are not federal savings banks themselves. *See Haggarty v. Wells Fargo Bank, N.A.*, C 10-02416 CRB, 2011 WL 445183 (N.D. Cal. Feb. 2, 2011); *Khan v. World Savings Bank, FSB*, No. 10-CV-04305-LHK, 2011 WL 133030 (N.D. Cal. Jan. 14, 2011); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010). Other courts have questioned the reasoning behind these opinions. *See Henderson v. Wells Fargo Bank, N.A.*, No. 3:12-CV-3935-L, 2013 WL 5433498 (N.D. Tex. Sept. 30, 2013) (Lindsay, J.) (noting that *Khan* relies on a case that cites no authority for its holding); *see also Gerber v. Wells Fargo Bank, N.A.*, No. 11-01083-PHX-NVW, 2012 WL 413997 (D. Ariz. Feb. 9, 2012) (criticizing opinions holding that HOLA preemption applied to successors of federal savings banks because those opinions cite either "(a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding to the rights of the entities they acquire").

The Fifth Circuit has yet to decide the issue, and this Court need not resolve the applicability of HOLA in this case given that dismissal is appropriate on other grounds as addressed below.

  B. Sufficiency of Chavez's Allegations

Chavez's second amended complaint must be dismissed because he has failed to allege sufficient facts to state a claim upon which relief may be granted.

    1. Breach of Contract

"In Texas, 'the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered

7

performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.—Houston [14th Dist.] 2005, pet. denied)). According to Chavez, Wells Fargo breached two contracts: the deed of trust and an oral loan-modification agreement. (Pl.'s Sec. Am. Compl. 6-8.)

Chavez claims that Wells Fargo breached the deed of trust "by failing to give [him] the statutorily and contractually required notices and the opportunity to cure and the right to reinstate the note." (Pl.'s Resp. Br. 10.) Chavez appears to be alleging that these notices, which are required under the Texas Property Code, were incorporated as terms into the deed of trust. But even assuming that these provisions were validly incorporated as terms of the deed of trust, Chavez cannot state a claim for breach of the deed of trust because his allegations indicate that he failed to perform or tender performance under that contract. Indeed, his allegations make clear that the he materially breached the deed of trust by defaulting on his loan payments. (Pl.'s Sec. Am. Compl. 2-3.) Chavez fails to "acknowledge that [his] initial (and never cured) contract breach provoked [his] problems, and a party in default cannot assert a claim for breach against the other party." *Water Dynamics, Ltd. v. HSBC Bank, USA, Nat'l Ass'n*, 509 Fed. App'x 367, 369 (5th Cir. 2013) (unpublished) (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)); *see also Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 341

8

(5th Cir. 2012) (unpublished) ("Under well-established principles of Texas contract law, [a] material breach would normally prevent [the plaintiff] from maintaining a breach-of-contract claim.").

Chavez asserts that Wells Fargo waived its right to accelerate and foreclose and that Wells Fargo cannot now rely on his initial default as a defense. But this argument fails for two reasons. First, the deed of trust contains a no-waiver provision. (Def.'s App. 13.) Second, Chavez has not alleged facts showing that Wells Fargo "manifested an 'actual intent to relinquish [its] rights' under the [deed of trust], an essential element of waiver under Texas law." *Thomas*, 499 F. App'x at 341 (quoting *G.H. Bass & Co. v. Dalsan Props.-Abilene*, 885 S.W.2d 572, 577 (Tex. App.—Dallas 1994, no writ)); *see also Water Dynamics*, 509 F. App'x at 369 ("Allegations of 'inconsistent and inequitable conduct' that allegedly violated the note, deed of trust, and oral modification, do not suffice to show an intentional waiver by the lender, especially in the face of the deed of trust's anti-waiver provision.").

Chavez also contends that Wells Fargo breached an oral loan-modification agreement. Although the terms of this alleged oral agreement are not entirely clear, it appears to be based on a number of alleged promises made to Chavez by Wells Fargo representatives. According to Chavez, Wells Fargo promised that Chavez qualified for a modification, that he need not continue making payments, and that the property would not be foreclosed upon during the loan-modification process. Presumably, Chavez is contending that this set of promises

amounted to an offer to enter into an oral loan-modification agreement and that he accepted the offer by promising to make good on his payments and faxing in the requested documents.

This contention is without merit. An agreement to modify a mortgage loan exceeding $50,000 is subject to the Texas statute of frauds and "must be in writing to be enforceable." *See Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 328-29 (5th Cir. 2013) (unpublished) (citing Tex. Bus. & Com. Code Ann. § 26.02(a),(b)); *see also Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361, 364 (5th Cir. 2013) (unpublished) (observing that "[w]hen a written agreement is governed by the statute of frauds, it cannot be materially modified by a subsequent oral agreement"). Therefore, Chavez cannot state a claim for breach of an oral loan-modification agreement.

2. Anticipatory Breach of Contract

"In Texas, in order to prevail on a claim for anticipatory breach, a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)(citing *Taylor Pub. Co. v. Sys. Mktg. Co.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)). Chavez has not alleged facts sufficient to satisfy any of these elements. In addition, he fails to differentiate his anticipatory-breach claims from his breach-of-contract claims. (Pls.' Resp. Br. 14-15.) Thus, the former fail for the same reasons as the latter. *See Water Dynamics*, 509 F. App'x

at 369 ("In lieu of repudiation, [Appellants] allege no more in their appellate brief than the same deed of trust breaches already discussed. There is no legal basis to collapse these two claims, nor is there any basis to infer from the lender's conduct a positive and unequivocal repudiation of the contract. In addition, this claim cannot excuse the consequences of Appellants' prior breach.").

### 3. Unreasonable Collection Efforts

"Under Texas law, unreasonable collection efforts is an intentional tort." *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (Lynn, J.) (citation and internal quotation marks omitted). "The elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id.* (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2009, no pet.)). Nevertheless, it is evident that to prevail on such a claim a plaintiff must demonstrate "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Water Dynamics*, 509 F. App'x at 370; *see also Thomas*, 499 F. App'x at 342 ("[T]he tort of unreasonable collection is intended to deter outrageous collection techniques, particularly those involving harassment or physical intimidation."); *De Franceschi v. BAC Home Loans Serv., L.P.*, 477 F. App'x 200, 204–05 (5th Cir. 2012) (applying the "willful, wanton, malicious" standard to plaintiff's unreasonable-collection claim and observing that the "ordinary person" standard urged by plaintiff "has largely been disavowed by Texas courts").

Chavez has not alleged facts suggesting a willful, wanton, or malicious course of harassment by Wells Fargo. *Water Dynamics*, 509 F. App'x at 370. Nor has he alleged that Wells Fargo intended to inflict mental anguish or bodily harm upon him. *Id.* Rather, at most, what Chavez has alleged is bad business—a situation in which Wells Fargo's left hand did not know what its right hand was doing. While undoubtedly frustrating, this does not rise to the level of willful, wanton, or malicious behavior necessary to support a claim for unreasonable collection efforts.

    4.   TDCPA

The TDCPA makes it unlawful for a debt collector to employ the following practices, among others: (1) "threatening to take an action prohibited by law"; (2) "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless [it] is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer"; (3) "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding"; and (4) "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code Ann. §§ 392.301(a)(8), 392.303(a)(2), 392.304(a)(8)&(19) (West 2013).

Chavez alleges Wells Fargo assessed charges and fees that were not authorized by the deed of trust or otherwise "legally chargeable to the consumer." Tex. Fin. Code. Ann. § 392.303(a)(2). And although

Chavez states in conclusory fashion that these charges involved late fees and interest, he does not put forward facts clarifying why these charges were not "legally chargeable." *Id.* Therefore, this contention is without merit. *See Thomas*, 499 F. App'x at 343 ("[C]onclusional allegations of unexplained fees . . . do not constitute evidence of improper fees.").

Chavez also contends that Wells Fargo "misrepresent[ed] the character, extent, or amount of [his] debt" and used "false representation[s] or deceptive means to collect [his] debt." Tex. Fin. Code. Ann. § 392.304(a)(8)&(19). But "discussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of a debt." *See Thomas*, 499 F. App'x at 343 (citation and internal quotation marks omitted). Rather, those representations pertain to the servicing of the loan. Moreover, Chavez does not "direct [the Court] to any authority indicating that [Wells Fargo's] failure to modify [his] loan as promised constitutes a violation of Section 392.304(a)(19)." *Id.*[1]

     5.   Negligent Misrepresentation

Under Texas law, a claim for negligent misrepresentation has four elements:

---

[1] Chavez alleges that Wells Fargo failed to give him notice of his default, notice of its intent to accelerate, a chance to cure, and an opportunity to reinstate the note. Chavez contends that these failures made foreclosure an "action prohibited by law," which Wells Fargo could not threaten to do. *See* Tex. Fin. Code Ann. § 392.301(a)(8). These allegations concerning section 392.304(a)(8) are the same allegations supporting his claim for breach of contract, which the Court has discussed and resolved against Chavez above.

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Chavez proffers a number of misrepresentations allegedly made by Wells Fargo. At bottom, however, the alleged misrepresentations amount to "promises of future action," which "are not actionable as a negligent-misrepresentation tort." *De Franceschi*, 477 F. App'x at 205; *see also Thomas*, 499 F. App'x at 342 ("The [plaintiffs'] attempt to characterize the banks' supposedly broken promises as 'existing facts' is unpersuasive and unsupported by the summary-judgment record.").[2] Moreover, Chavez's "reliance on oral representations by customer service representatives that were contradicted by the terms of the loan agreement and the notice of foreclosure was not reasonable as a matter of law." *Milton*, 508 F. App'x at 330 (citing *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 795 (Tex. App.—Houston [14th Dist.], 2007, pet. denied)).[3]

---

[2] "Indeed, the very fact that [Chavez] tr[ies] also to construe this [set of] statement[s] as an oral contract belies [his] re-characterization of the statement[s] as [statements] of existing fact." *De Franceschi*, 477 F. App'x at 205.

[3] Further, it appears that Chavez's negligent-misrepresentation claim is based on duties imposed by the parties' contractual relationship in the deed of trust—as opposed to a duty imposed by tort law. Thus, the claim is likely barred by the economic-loss rule. *See Belanger v. BAC Home Loans Serv., L.P.*, 839 F. Supp. 2d 873, 877 (W.D. Tex. 2011); *see also Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *5 (N.D. Tex. Feb. 21, 2012) (Boyle, J.) ("[W]hen a plaintiff alleges only economic loss arising out of a contractual relationship between the parties, the plaintiff is precluded from proceeding under a negligence cause of action." (citation omitted)); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415-18 (Tex. 2011) (explaining in detail

IV.  Conclusion

Based on the foregoing, the Court concludes that Chavez has not stated claim upon which relief may be granted.  Accordingly, Wells Fargo's motion to dismiss is GRANTED.  All claims in the above-styled and -numbered cause are DISMISSED WITH PREJUDICE.

SIGNED November 5, 2013.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

the economic-loss rule); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.").

TRM/lj                                    15